Protection Insurance Company *vs.* Hall & Gideon.   Ord. Pet.

APPEAL FROM CAMPBELL CIRCUIT.                    Case 43.

1. Though a small over valuation of property made by the assured when obtaining insurance, such as might result from difference in opinion, would not vitiate a policy, yet if the over valuation be serious, and knowingly made, and (in case of work in progress,) upon work not in fact done, it will vitiate the policy.
2. It is error for the court to give to the jury an instruction hypothecated upon a fact which the jury are not authorized to find to be true from the evidence.
3. Builders who undertake to build and receive compensation upon performance of the work have an insurable interest in the work so far as done at the time insurance is obtained.
4. It is the duty of the assured when obtaining insurance to communicate to the insurer every fact calculated to have influence in fixing the value of the subject of insurance.

The facts of the case are fully set out in the opinion of the court.

*J. W. Stevenson,* for appellants—

The counsel for appellants argued—

1. that the appellees had no insurable interest in the carpenter's work mentioned in the policy at the date of the policy.

2. That the appellees concealed from the appellants, at the time of their application, the arrangement between themselves and Tibbatts, that the carpenter's work was to be paid for in real estate, and that such concealment was material to the risk, and vitiated the policy.

3. That the appellees, in the application and survey on which said policy issued, made a false representation of the value of the work done—a valuation at $4,500, instead of $3,600, and thereby obtained a greater insurance than they could otherwise have obtained ; and that such misrepresentations, by the conditions of the insurance, was such a breach of good faith as renders the policy void.

4. The court erred in giving the instructions asked for by the appellees' counsel, and in refusing those asked for by the appellants' counsel.

5. The verdict is not sustained by the evidence.

6. The court erred in overruling appellants' motion for a new trial.

On the first point, the appellees had not an insurable interest. As they were not the owners of the property on which the building was being erected, it was incumbent on them to show an equitable lien upon the work. Has that been done? It is charged in the petition that appellees held a lien for the carpenter's work, under the statute giving liens to mechanics and builders in Campbell county, (*Ses. Acts*, 1849–50, 473,) which is denied by the answer. By the provisions of that act, any person having a lien under it may enforce the same by filing a bill in the Campbell Circuit Court, at any time within six months from the completion of the work or furnishing the materials. All persons having a lien may join in a bill against the employer. Such claim to be clearly and distinctly made, and as clear and distinct an answer made.

The work was to be paid for in lots of Tibbatts; they selected the lots, for which they gave their notes, with an agreement indorsed thereon, that they were to be paid for in work, at 33½ per cent. on the bill of prices. Under this agreement the work was commenced at the period designated. The work was done upon the house insured, which work was to be paid for in lots. This was a waiver of any lien upon the building.

It is true that the statutory lien does not extinguish the debtor's personal liability, but the lien is itself extinguished, whenever, in addition to the personal liability, the mechanic accepts additional security. The taking a note does not extinguish the lien. Its direct effect is, however, to suspend its enforcement until the credit given by the note has expired. If this credit be longer than the limitation allowed by the

statute for the assertion of the lien, then the lien is extinguished.

We assume it to be competent for a mechanic to waive his lien, and that in every case where the evidence shows that the mechanic did not look to the lien, but was willing to waive it by taking outside security, or by the performance of any act which showed the intention of relying exclusively on the personal liability of the debtor, no lien could attach. If, therefore, the appellees agreed to do the work under a contract that all work was to be paid for in lots—four of which they received—can it be true that any lien ever attached so long as Tibbatts or his heirs had the privilege of tendering lots in payment of the work and discharge of his contract? The facts are inconsistent with any reservation of lien. Hall & Gideon agreed to do the work and receive their pay in lots, and this is conclusive against any right to assort a lien upon the house.

If it were admitted that after the work had been, in part, performed, the appellees agreed to take the lots selected, in satisfaction of work done in Ohio, it would not militate against the conclusion that there was a waiver of the lien on the Newport property. The agreement was to receive the whole compensation in lots, not in these particular lots selected. The fact that Tibbatts ordered the lots received to be credited to the work done in Ohio, some six months after the reception of the lots by the mechanics on a different house, could not give a lien which before had no existence. So long as Tibbatts or his representatives had a right to pay for all the work done on the house in Newport in real estate, there could be no lien.

Though Col. Hodge and Mr. Barry both prove it to be the agreement that these lots were to pay for the house built in Ohio, yet it is not proved that the note for $1,600 given for these lots was ever given up. Col. Hodge, the administrator of Tibbats, although he regarded the settlement as made, could not give

up the note to Hall & Gideon except by order of court. Upon this $1,600 note was the indorsement made, that it was to be discharged by the building of the Newport house, which was made at the time the work was commenced, and, under the contract, was to be wholly paid for in lots ; until this note was surrendered, no final settlement could have taken place as to the four lots, the title to which had been conveyed to the mechanics.

We therefore insist, 1. That the reception of the lots by the appellees, under their contract to do the work on the house in Newport, and receive the compensation in real estate ; the performance of the greater portion of the work under the agreement and the indorsement upon the note given for said lots, that it was to be paid for in real estate, is inconsistent with, and a waiver of, any lien upon the house. 2. That if said four lots, after the performance of said work, were agreed to be credited on the Ohio house, it could not and did not create a lien, the work having been performed under a different contract, and six months having elapsed since the performance of the work before the assertion of the lien. 3. That if these lots had been credited on the Ohio house, the agreement to receive real estate for the work on the Newport house, did not prevent Tibbatts from tendering real estate, nor relieve the appellees from their obligation to receive real estate in full discharge of the work done on the Newport house.

2. We maintain that good faith required that appellees, at the time of their application for this policy, should have disclosed to the agent of the Protection Insurance Company their agreement with Tibbatts, to take their compensation, for the work proposed to be done, in real estate. The insured is bound, though no inquiry be made, to disclose every fact within his knowledge which is material to the risk.

The test of materiality is the probable influence upon the mind of the underwriter, in determining to assume the responsibility; and whenever a disclosure might have prevented the signing of the policy, or caused the exaction of a higher premium, it is then material, and vitiates the policy. (1 *Arnold on Ins.* 450; 1 *Phillips on Ins.* 221; *Schwarts vs. U. S. Ins. Co.* 3 *Wash. C. C. Rep.* 170; *Catlin vs. Springfield Ins. Co.* 1 *Sumn. C. C. Rep.* 434; *Pratt vs. Philbrook,* 3 *Red. Maine Rep.* 411; *Addison & Clendennin vs. Louisville Ins. Co.* 7 *B. Monroe,* 473.)

We rely that there was a misrepresentation by. the appellees of the cash value of the work insured in their written application, which vitiates the policy.

3. The policy was issued by H. K. Lindsey, as agent of the appellants, in Newport, Ky., upon a written application and survey signed by the appellees. It consists of questions and answers, thirteen in number. The eleventh question, in this written application was: "What is the present cash value of the property insured?" To which appellees replied: "Forty-five hundred dollars at least." The appellees admit that the real cash value at the time of signing the policy, was only $3,600. One of them gives as a reason for this misrepresentation, that he included not only the work done, but what he expected to do.

The policy sued on is a valued policy, and issued on written representations, on the 3d August, 1852, for $3,500 dollars. On the 27th August, the fire occurred. By reference to the policy, it will be seen, that it was in reference to certain conditions thereto annexed, and that the application or survey made by the appellees is made apart of the policy. The fourth condition is as follows: "A false description by the assured of a building insured, or in a valued policy, an *over-valuation* shall render absolutely void a policy issued upon such description or valuation, but the office will be responsible for the accuracy of surveys made by its agents."

By the seventh condition it is provided : "When a policy is made upon a survey and description of certain property, such survey and description shall be. taken and assumed to be part and portion of such policy and warrant on the part of the assured."

Under such state of facts there can be no doubt that the false statement of the appellees in their written application to the agent of the appellants, as to the value of the property, was material, and therefore rendered the policy void. A representation is thus defined by Angel, in his admirable work on Life and Fire Insurance. (*Sec.* 147 :) "A verbal or written statement by the assured to the underwriter before the subscription of the policy as to the existence of such fact or state of facts tending to induce the underwriter more readily to assume the risk, by diminishing the estimate he would otherwise have formed of it." The term insurance is in the nature of a collateral contract, either by writing not insertted in the policy, or by parol, and is a communication of facts and circumstances relative to the insurance, made to the underwriters, in view of enabling them to estimate the risk and calculate the premium. There is no difficulty in distinguishing a representation from a warranty, the former being a part of the preliminary proceedings which propose a contract, and the latter a part of the contract as it has been completed. A misrepresentation renders the contract void, on the ground of fraud. A non-compliance with the warranty is an express breach of the contract. A want of truth in a representation is fatal or not to the insurance, as it happens to be material or immaterial. Representations, although not warranties, may become express contracts in relation to a particular fact, as in the case of *Barret vs. Saratoga Mutual Fire Ins. Co.* 5 *Hill*, 188, cited in *Angel on Ins. sec.* 148, where the cases are collected. (*Arnold on Ins.* 378.) The representation is also considered to be on the face of the policy, although contained in another paper, if distinctly referred to

and expressly made a part of it, as by the conditions of the policy in this case. (3 *Kent's Com.* 450; 7 *Wendell*, 270; 5 *Hill*, 188; 7 *Ib.* 122.)

We admit that the survey or application is not a part of the contract, unless made so by unequivocal language on the face of the policy, (13 *Wendell*, 92; 5 *B. Monroe*, 634,) but if untrue in a material point, it makes void the policy, though not amounting to a warranty.

Whether the statement of Hall & Gideon be regarded as a warranty or a representation, is wholly immaterial in the present case; if it be construed as having been made part of the contract, and therefore a warranty, the slightest variations avoids it. If it be regarded as a representation simply, and it be false in a material point, it avoids the policy.

Now the question occurs, was the representation as to the value of the work, material to the risk? Every part of the policy must be so construed as to carry out the intention of the underwriter and of the assured. The conditions annexed are part of the policy, and explain the reciprocal obligation of the parties. By one of these conditions in a valued policy, the applicant is required to state the location, situation, and value or interest in the property to be insured. The Insurance Company say to the applicant, if *you* make this description and estimate, and they are false, your policy is void; but if our agents make them we will be responsible for their correctness. The applicant agrees that the survey or representation, however made, shall become a part of the policy, and abide the result of its falsity.

The assured, in this case, knew it was the rule of the company to insure for only three-fourths of the value; by misrepresenting the value they obtained an insurance for more than the entire value at the date of the policy. By the express condition of the policy, this misrepresentation renders the policy void. It was the duty of the assured to state the value truly. (*Niblo vs. North American Fire Ins. Co.* 1 *Sand-*

*ford's S. C. Rep.* 531; *Addison & Clendennin,* 7 *B. Monroe,* 473; 6 *Humphries Tenn. Rep.* 176.)

A false representation also vitiates a policy if it be in a material point. (*Carpenter vs. American Ins. Co.* 1 *Story's C. C. Rep.* 67; 16 *Peters,* 495; 4 *Howard's Supreme Court Rep.* 185; but especially *Davenport vs. New England Mutual Fire Ins. Co.* 16 *Cushing's Mass. Rep.* 340; where the policy was held void because the assured failed to disclose the existence of a mortgage on the property insured.)

4. If the views already presented be correct, it follows that the court erred in giving the instructions asked for by the appellees, and in refusing those asked by the appellants. In the first instructions asked by the appellees, the court authorized the jury to find the full amount of the policy, if the policy was signed by the company, and the house burned. It is difficult to see how the Circuit Court could instruct the jury that they might find the full amount of the policy, when it was agreed that the insurance was only intended to secure three-fourths of the value, which did not amount to the sum stated in the policy. By the conditions of the policy, only three-fourths of the cash value was insured. By the misrepresentation of the assured, the insurers were led to believe that three-fourths of the cash value was thirty-five hundred dollars, when, in fact, it was much less. (*Egan vs. the Mutual Insurance Co. of Albany,* 5 *Denio,* 329.)

The second instruction moved by appellees was erroneous, and ought not to have been given. It was misleading, and opposed to the testimony of Lindsey, who proved that he relied upon the testimony of appellees, made no examination of the work, and would not have taken an insurance for $3,500, if he had not relied upon appellees' statement that it was worth $4,500, and there was no opposing testimony. It was equally erroneous to give the instructions given in lieu thereof.

5. The verdict is for too great a sum. We think the ruling of the court was erroneous in every respect, and ask a reversal.

*J. Harlan,* on the same side—

These questions arise in this case: 1. Had the appellees an insurable interest in the house, at the date of the policy? 2. Whether their failing to state all the facts and circumstances connected with the contract to build the house vitiated the policy? 3. Whether the overvaluation of the work by appellees vitiated the policy? 4. Whether the court erred in refusing instructions asked by appellant, and giving those moved by the appellees? 5. Whether the court erred in overruling the motion for a new trial?

1. The appellees failed to show that they had any lien on the property, under the act of the Legislature for the benefit of the mechanics of Campbell county, and that such was the only way they could get compensation for their work done on the house. There was no condition in their contract with Tibbatts that they were not to be paid for their work if the house was burned, or destroyed by tempest or otherwise.

But there is still a more formidable objection, which is that, when they commenced the work, they agreed to receive compensation in real estate. That being the case they cannot assert a lien for money, in violation of their agreement. There was, at no time, any agreement by Tibbatts, to pay money for work done on the Newport property. What, then, did the appellees attempt to insure? They say their *chance* for having an available lien for money on the house in Newport. We submit whether there was any insurable interest in the appellees.

2. The appellees failed to state, when they applied for insurance, the true nature of their interest, and their contract with Tibbatts. If they had done so, the probability is, that appellants would not have

taken the risk, because it would then have appeared that appellees were interested in having the house burned, and thereby secured to themselves money instead of lots in Newport. The misrepresentation was material, and the failure to make a true representation vitiated the policy. (*Columbian Ins. Co. vs. Lawrence,* 2 *Peters,* 49; *Catron vs. Tennessee Ins. Co.* 6 *Humphries,* 176; 12 *Wendell,* 400; 6 *Cowan,* 673; 9 *Wendell,* 163; 1 *Edward's N. Y. Ch. Rep.* 64.)

3. The appellees, in answer to question eleven, in the interrogatories propounded in the application, stated the value of the work which had been performed, at "$4,500, at least." Hall, one of the appellees, was sworn to testify in the case, and then stated that, at the time he fixed the value of the work, he not only included work then done, but work which he expected to do in completing the house. That the work done at the time he obtained the policy was $3,600. Other proof showed that the work done at the time of the burning, was worth from $3,000 to $3,600. The court is referred to the case of *Catron vs. Tenn. Ins. Co.* 6 *Humphries,* 176; *Carpenter vs. American Ins. Co.* 1 *Story,* 67; 16 *Peters,* 495; 4 *Howard,* 185; 2 *Peters,* 25; *Angel on Fire and Life Ins.* 185.) The counsel for appellees attempt to avoid the force of this question by insisting that Lindsey, the company's agent, made the valuation. The evidence does not sustain them.

4. The first instruction, giving for the appellees, should not have been given; it did not cover the whole case, and was misleading.

The second insrtuction was abstract. There was no testimony conducing to prove the fact on which it was hypothecated.

All the instructions asked for by the appellants should have been given to the jury. As to the first and third, there can be no controversy; the first based upon the hypothesis, that if the appellees misrepresented the value of the work which had been done when they obtained the policy, they were not

entitled to recover. All the authorities sustain this principle; and the second, that if there was no lien under the mechanic's law, there no was insurable interest.

The instructions given in substitution of those asked for by appellant were misleading and erroneous. Why say to the jury that if appellees expressed an opinion as to the value of the work done, and the appellants' agent acquiesced in it, the appellants were bound thereby. These questions and answers were a part of the contract of the parties, and the appellees were bound by their statement.

The court erred in refusing a new trial, and upon the whole case there should be a reversal.

*W. B. Kinkead*, also for appellants—

Argued—1. That the appellees had failed to show that they had an insurable interest in the property insured.

2. That the value of the work destroyed by the fire does not appear in the pleading of appellees.

3. That the conditions of the policy had been complied with.

4. That appellees did not, at the time the policy was obtained, state truly the nature of the interest which they had, upon which they asked insurance, growing out of their contract with Tibbatts, but falsely represented the value of the work done on the building insured. Cited no authority—referring therefor to brief of adjunct counsel.

*G. B. Hodge, H. C. Harris, and C. S. Morehead*, for appellees—

1. Though it may have been true, that upon the $1,600 note given by appellees to Tibbatts, for lots in Newport, there was an indorsement by Tibbatts, to take the amount of the note in carpenter's work, it did not destroy the lien of the appellees. The contract was not obligatory. There was no bond given by Tibbatts for the conveyance of the lots,

and, moreover, before Tibbatts died, and long before appellees obtained their insurance, Tibbatts and appellees cancelled that agreement, and the $1,600 was settled by work done in Ohio, on a house built there for Tibbatts. At the time the risk was taken, the appellees had no security of any kind, save the lien under the mechanic's lien law. There cannot remain a doubt but that appellees had an insurable interest which might be insured.

2. But it is said there was a misrepresentation by appellees, of the value of the work insured. There are two modes by which values are ascertained for purposes of insurance: 1. By a survey and examination by the agent of the insurers. 2. By representation made by the assured. In many cases, nearly all, where an insurance is effected on property not in the locality of the agent, the agent requires the application to be made in writing. In this writing it is required that the applicant shall describe the property sought to be insured, its location, and the character and amount of interest in the property. In the last case there is no survey made. The agent relies upon the representations of the applicant, and he is bound to give a fair and honest statement in respect to the property, value, interest, &c. Four-fifths of all insurances are taken in the latter mode.

In the case of an insurance effected by the survey of agent—which means a look or examination—the agent is responsible as to the value of the property. (So says the condition of the policy.) Yet it is true, the insured may render his policy void by misrepresentation of the character and amount of interest he has in the property. This is not only the usage but the common sense of the condition of the policy; for, as to the interest the insured has in the property, he ought to know, and is bound to know, all about it; but as to the value of personal property, the agent can form his own opinion, either on his own judgment and observation, or he may rely on the information of others, including the insured; and when

he has seen the property or has means to inform himself, he cannot be allowed to say that his judgment was founded on the erroneous statement of the assured or any one else.

It is asserted with confidence that inventories are never required in making insurances. The agent takes a survey, where he is on the locality, asks the opinion of the assured, and the value is guessed at, because certainty cannot be reached in any other way than by an inventory and valuation—which is never done. A mistake as to the amount does not vitiate the policy where there is not fraud—nothing but fraud, in such case, will affect the policy.

Hall is to be understood, in his testimony, to say that there was $3,600 worth of work done on the house; $900 of materials and work not put up.

The jury were directly instructed, as to the effect of fraud in the transaction, in respect to overvaluation. The question of fact was for the jury. They have decided it, and this court will not say it shall be again re-tried. Policies should be liberally construed for the benefit of the assured. We hope the court will find no difficulty in an affirmance of the case.

Chief Justice MARSHALL delivered the opinion of the Court—

This action was brought by Hall & Gideon, carpenters or house-joiners, on a policy of insurance issued by the defendants on the 3d of August, 1852, insuring the plaintiffs for three months against loss or damage by fire, "to the amount of three thousand five hundred dollars, on their work done on the two story brick house now being finished, belonging to the estate of John W. Tibbatts," the loss to be paid in sixty days after its occurrence. On the 27th of August, 1852, the house was destroyed by fire; and in November of the same year, the plaintiffs, having previously complied with the requisitions of the policy in case of loss, and not having been paid within

*(margin: PROTECTION INSURANCE CO. vs. HALL & GIDEON.)*

*(margin: January 26.)*

sixty days nor afterwards, commenced this action by a petition, which refers to the policy as filed and made a part thereof. A demurrer to the petition having been overruled, the defendants filed their answer, in which they deny that the plaintiffs had, at the time of procuring the policy, any lien or other insurable interest in their work done upon the house mentioned. As the ground of this denial, and also as a specific ground for avoiding the policy, they alleged that the plaintiffs had agreed to do the work on the house at thirty-three and one-third per cent. on the bill of prices, and to take, in payment, lots in Newport; that they had selected and taken possession of the lots, for which they gave their note, or notes, to Tibbatts for $1,600, with an indorsement thereon that the same might be discharged in work on his house, at the rate above mentioned, which facts they say were unknown to the defendants, and were fraudulently and designedly concealed from them in order to procure insurance to the amount of $3,500, which they say could not have been done if they had known said facts, and they aver that this was known to the plaintiffs. They also allege that by the concealment of these facts their risk was increased; and further, that the plaintiffs procured the policy by falsely and fraudulently representing that the value of their work done on said building on the 3d of August, 1852, was $4,500, when it was, in fact, worth not more than $3,000, of which plaintiffs had received a large amount in said lots, which was fraudulently concealed. They say the plaintiffs had not an interest of $4,500 in said work, as fraudulently represented by them; and they insist that the facts aforesaid, and the concealment and misrepresentation thereof, rendered void the policy, which, in one of the conditions thereto annexed, and made part of it, declares that in a valued policy, an overvaluation shall render absolutely void a policy insuring on such overvaluation. Upon the issue made by this answer there were two trials, in each of which a verdict was found for the plain -

tiffs. This record contains only the evidence and opinions of the court delivered on the last trial, in which the jury, under instructions from the court, found for the plaintiff $3,832, being the amount insured, with interest thereon from the end of sixty days after the loss. The contract for the work, as alleged in the answer, was proved; also, the selection of the lots by the plaintiffs and the conveyance of at least three of them, they still claiming the fourth. But it was also proved that after they had done considerable work on the house in question, and inclosed it, there being some delay in furnishing marials by Tibbatts, the plaintiffs, under his employment, went to Ohio, and worked on a house which he was having built near Urbana, for which they were be paid one-half in cash, and one-half in lots; and that after their return, and before the insurance was obtained, there was evidence that three of the lots were conveyed to them in payment for the work done in Ohio, and that the amount due on their note or notes aforesaid was credited to Tibbatts on that job, and fully settled. It does not appear, however, that the defendants were informed of any part of these transactions until after the loss had occurred. It was also proved on the part of the plaintiffs, by the agent of the defendants by whom the insurance was made and the policy delivered, that being struck with the amount of work for which insurance was asked, he went to look at the house, but took the statement of the plaintiffs as to the value of the work, and made them indorse the survey, and that said indorsement is in their own hand writing. On his subsequent examination by the defendants, he made substantially the same statement, and produced the survey, signed by the plaintiffs, in which the eleventh interrogatory is: What is the present cash value of the property? And the answer is: "$4,500 at least." And one of the plaintiffs, being called on by the defendants to testify, stated, that "when he placed the value in the survey offered by defendants, and applied for insurance, he

included in said estimated value not only the work then done, but that which he expected to do in completing the house." That at the time, "he thought the work then done was worth fully $3,600, and he included the work intended to be performed, which he thought would amount to $4,500, and that was the reason why he informed the agent that the value of the work was worth $4,500." But he does not say that he informed the agent that he included in his estimate $900 worth of work not then done. And to the special interrogatory as to present value, he answered, "$4,500 at least"—although that sum exceeded his own real estimate of the actual present value by $900. Other witnesses estimate the value of the work done at the date of the insurance, some higher and some lower than $3,600, it being stated in the bill of exceptions that it was proved to have been worth from $3,000 to $3,600. The fourth condition of the policy, which contains the provision before referred to, with respect to the consequences of overvaluation states also, "that the office (that is, the company,) will be responsible for the accuracy of surveys and valuations made by its agents."

Upon this evidence, the court instructed the jury, on motion of the plaintiffs, that if the defendants insured the work of plaintiffs on the house for $3,500, on the 3d of August, and the house was consumed on the 27th of the same month, without any neglect, cause, or agency of the plaintiffs, the jury should find that sum for the plaintiffs, with interest from sixty days after the house was burnt. And two instructions moved for by the defendants having been refused, the court, in lieu thereof, instructed the jury that if the defendants relied upon the valuation fixed by the plaintiffs, or either of them, upon the work in question, and the plaintiffs knowingly overvalued it, and by that means obtained the policy sued on, the policy is void, and they must find for the defendants. But if they believed that the agent of defendants made a survey of said work, and that on examina-

tion and valuation thereof by said agent, the plaintiffs, or either of them, expressed an opinion of the value thereof, in which said agent acquiesced, and thereupon issued said policy to plaintiffs, they must find for the plaintiffs, although they may believe that the valuation so made by them was erroneous.

The instruction given for the plaintiffs could only be justified upon the ground that upon the evidence the court had a right to assume, 1st. That the plaintiffs had an insurable interest in the work which was the subject of the insurance. 2d. That that interest was worth, at the date of the policy, at least the sum of $3,500 insured upon it; and 3d. That the plaintiffs had neither done nor omitted anything, by reason of which the policy was void, or by which their recovery should be reduced. And in each of these assumptions, and especially in the two last, there were involved questions of fact depending on inconclusive evidence, and which, therefore, should have been submitted to the jury. The facts submitted by the instruction were uncontested in the pleadings and evidence, and the instruction was, in effect, peremptory, and was, upon the evidence, erroneous and prejudicial. This error would scarcely have been cured by the subsequent instructions given in lieu of those asked for by the defendants, if they had been entirely correct, and had covered the whole case. For the jury would still have had before them the instruction requiring them to find for the plaintiffs if they believed that the policy was executed by the defendants, and that the house was afterwards, in the same month, and without the fault of the plaintiffs, consumed by fire.

But the subsequent instructions are themselves erroneous and misleading. There is no proof that the agent of the defendants made any survey or valuation of the work, or attempted or pretended to do so, and the jury were not authorized by any evidence in the record to find that he did. He says he relied on the plaintiff's valuation; and although he saw the

building, and may have looked at the work, there is no evidence that he was capable of valuing it by merely looking at it, or even by measurement, or that he had any such knowledge of the contract under which it was done as would have enabled him, even if he had the requisite skill, to estimate its value under the contract; which alone constituted the interest of the plaintiffs in it as far as the work was done. Moreover the survey containing the valuation was signed, not by the agent, but by the plaintiffs, which makes it their act and not his. And one of them not only states that he placed the value in the survey, but admits that he placed it there considerably higher, (25 per cent. higher,) than his own estimate of the value of the work actually done, his reason for which he states in his testimony. But he does not say that he informed the agent of the fact, that he was including in his estimate work which he expected to do, but which had not been done. And assuming, as in reason must be done, that his estimate of his own work was sufficiently high, the fact that the agent acted upon or acquiesced in his valuation made not only upon work done but also on a large quantity of work anticipated or expected to be done, and not then to be seen or valued, tends most strongly to prove that the agent did rely upon the presumed knowledge and fairness of the plaintiff, and did not exercise or trust to his own judgment; or, if he had no judgment on the subject, it is but the more certain that he was imposed upon and deceived by the valuation which one of the plaintiffs professed to place upon his own work actually done, but in which he included work not done, and as to which, if it was the proper subject of insurance at all, the insurer should at least have had the opportunity, by full information on the subject, of determining whether he would insure it or not. In the absence of such information, the agent had a right to rely upon the valuation made by the plaintiff as fairly estimated upon the work done. His taking it as a part of the sur-

vey signed by the plaintiffs, shows that he did rely upon it and make it the basis of the insurance, which if the true value had been stated would hardly have been made for a sum but one hundred dollars less than that value. The overvaluation then was a means of getting insurance for a larger sum than would otherwise have been insured upon the work. A small overvaluation, or such as might be reasonably accounted for on the ground of difference of opinion, might not, even under the fourth condition which has been referred to, have vitiated the policy. But if the overvaluation be serious and knowingly made, or made upon work not done, or a subject not in existence, and that fact not disclosed, whatever may have been the particular motive, and it could scarcely have been anything else than to get a greater sum insured, it must under the general principles of the law of insurance, as well as on the ground of the condition which has been noticed, be deemed a sufficient cause for avoiding the policy. Insurers against fire or other casualties would often have but a slight guaranty against loss, if they insure to an amount equal to or nearly approximating the total value of the subject insured: hence the usage, almost universal, of risking but a portion of the loss to which the subject is liable, and thus leaving to the insured, in the remaining hazard of loss to himself, a motive in his own self interest for care and precaution.

Under the first branch of the instruction under consideration, the jury could scarcely have failed to find, that the defendants relied upon the valuation made by one of the plaintiffs, and that he had knowingly overvalued the work done, and by that means obtained the policy sued on. But when they were informed, as by the latter branch of the instruction they would understand, that they might find that the defendants made a survey of the work, that their agent examined and valued it, and that the positive statement of value placed by them in the survey

PROTECTION INSURANCE Co. *vs.* HALL & GIDEON.

1. Though a small over valuation of property made by the assured when obtaining insurance, such as might result from difference in opinion, would not vitiate a policy, yet if the over valuation be serious, and knowingly made, and (in case of work in progress,) upon work not in fact done, it will vitiate the policy.

PROTECTION
INSURANCE CO.
vs.
HALL & GIDEON.

might be regarded as a mere opinion, and that the taking of the survey by the agent with the valuation of the plaintiffs in it and signed by themselves, might be regarded as mere acquiescense in their opinion, and not as their valuation and survey, a ground or some ground was furnished for a verdict against the defendants by these assumptions, for which we think there was no sufficient foundation either in the evidence or the law of the case.

2. It is error for the court to give to the jury an instructiohn hypothecated upon a fact which the jury are not authorized to find to be true from the evidence.

The first branch of this instruction was erroneous, because it required that the overvaluation should have been knowingly made by the plaintiffs or one of them. But it may not have been prejudicial, because the jury were bound to find that the overvaluation was knowingly made. The last branch of the instruction is erroneous, because it assumes that the jury might find facts which the evidence did not authorize them to find. The instruction given for the plaintiffs has been shown to be erroneous, and as this required a verdict for the plaintiffs on undisputed facts, the verdict was presumably affected by that instruction, or by the instructions given in lieu of those asked for by the defendants.

3. Builders who undertake to build and receive compensation upon performance of the work, have an insurable interest in the work so far as done at the time insurance is obtained.

Upon the question of an insurable interest which has been much insisted on, we observe that the policy says nothing about a mechanic's lien which the plaintiffs claimed or might have on the building which they were working on, but merely describes the subject as their work done on an unfinished house, &c. This we suppose may have been a proper subject of insurance irrespective of the lien, if the right to compensation from the employer, Tibbatts, depended on the completion of the house, that is, if by contract or custom they were not to be paid until the house was finished. The facts upon this subject do not clearly appear. But as the house was not finished and the plaintiffs were at work for its completion, when the insurance was obtained, we are inclined to think that if the arrangement by which particular lots were to be taken in payment had been changed

by the appropriation of those lots to the payment for other work, there was an inchoate lien on the work in question at the time of the insurance, although by the original and still subsisting agreement the plaintiffs were to take lots in payment for their work done and to be done on the house. That agreement being in parol was unenforceable, and it does not appear that it was in the power of Tibbatts to convey any lots in compliance with it. The conveyances actually made were made by the trustee of Mrs. Tibbatts, and as he understood for the Ohio work. We do not perceive that the mechanic's lien might not exist as a security for the conveyance of lots in payment of work done on a house, as well as for the payment of money for the same work, and especially if the agreement to pay in lots be unenforceable. But we are of opinion that the existence and nature of such an agreement, whether enforceable or not, should have been communicated to the insurers to enable them to judge of the value of the risk, and to determine whether they would make the insurance desired. But the effect of the failure to communicate such a fact upon the validity of the policy itself, depends upon its materiality to the risk, and we cannot upon the facts now appearing determine that question. We can say, however, that if the plaintiffs have received a conveyance of any of said lots in payment for their work done on the house to which the policy relates, or if they have an enforceable and available contract for such conveyance, the defendants are entitled to have a deduction from their liability by a diminution of the damages, if there be a verdict against them, to the extent of the value of such lot or lots as fixed in the contract.

4. It is the duty of the assured when obtaining insurance to communicate to the insurer every fact calculated to have influence in fixing the value of the subject of insurance.

The bill of exceptions does not state that the second instruction asked for by the plaintiffs was given. And as the principles of this opinion cover the whole case as now presented, we deem it unnecessary to state either the second instruction asked for by the

plaintiffs, or the two which were moved for by the defendants.

But, for the errors which have been noticed, the judgment is reversed, and the cause remanded for a new trial in conformity with this opinion.